**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA

v.  No. 4:06CR00082-06 JLH

YOLANDA SUMMONS

**OPINION AND ORDER**

Yolanda Summons filed a motion for attorney's fees pursuant to Rule 47 of the Federal Rules of Criminal Procedure. In that motion, Summons asserts that the Government's case against her was frivolous, in bad faith, and vexatious. Summons argues that she is therefore entitled to attorney's fees and expenses pursuant to the Hyde Amendment, Pub. L. No. 105-119, 111 Stat. 2440, 2519 (1997). The Government responds that Summons is not entitled to attorney's fees and expenses because it had probable cause to support the indictment against Summons. For the following reasons, Summons's motion for attorney's fees and expenses is denied.

**I.**

In the 1997 Hyde Amendment, Congress authorized federal courts to "award to a prevailing party [in a criminal case], other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust." Pub. L. No. 105-119, 111 Stat. 2440, 2519 (1997) (reprinted in 18 U.S.C. § 3006A, historical and statutory notes); *see also United States v. Gilbert*, 198 F.3d 1293, 1299-1303 (11th Cir. 1999) (discussing the Hyde Amendment's legislative history).

> From the plain meaning of the language Congress used, it is obvious that a lot more is required under the Hyde Amendment than a showing that the defendant prevailed

>   at the pre-trial, trial, or appellate stages of the prosecution. A defendant must show that the government's position underlying the prosecution amounts to prosecutorial misconduct – a prosecution brought vexatiously, in bad faith, or so utterly without foundation in law or fact as to be frivolous.

*Gilbert*, 198 F.3d at 1299. The prevailing party in the criminal proceeding bears the burden of showing that the Government's prosecution was either "vexatious, frivolous, or in bad faith." *See United States v. Bowman*, 380 F.3d 387, 391 (8th Cir. 2004).

Although the statute does not define "vexatious, frivolous, or in bad faith," courts have supplied definitions of those terms. According to the caselaw, a position is "vexatious" for purposes of the Hyde Amendment if the criminal case was objectively deficient, *i.e.*, it lacked either legal merit or factual foundation, and the "government's conduct, when viewed objectively, manifests maliciousness or an intent to harass or annoy." *United States v. Knott*, 256 F.3d 20, 29 (1st Cir. 2001). A position is "frivolous" when the position is "utterly without foundation in law or fact." *Bowman*, 380 F.3d at 390. A position is "in bad faith" if it is "not simply bad judgment or negligence, but rather . . . the conscious doing of a wrong because of dishonest purpose or moral obliquity. . . . [I]t contemplates a state of mind affirmatively operating with furtive design or ill will." *United States v. Isaiah*, 434 F.3d 513, 522 (6th Cir. 2006).

The evidence presented by Summons falls short of showing that the charges against her were brought vexatiously, were brought in bad faith, or were so utterly without foundation in law or fact as to be frivolous.

**II.**

Count III of the third superseding indictment charged that Jackie E. Porchay and Yolanda Summons violated 18 U.S.C. § 1956(a)(1)(B)(i) by conspiring with Harold Kelley to conduct a

financial transaction that involved the proceeds of unlawful activity knowing that the transaction was designed in whole or in part to conceal and disguise in nature the location, source, ownership, and control of the proceeds of that unlawful activity. Summons admits that shortly after October 1, 2005, she received $30,000 in cash from her sister, Jackie E. Porchay, and Porchay's boyfriend, Harold Kelley, in return for which she sold to Porchay a 2002 GMC Yukon Denali while retaining title in her name. Summons says that shortly after purchasing the Denali on October 1, 2005, she realized that she could not afford it. Summons also admits that in April 2006, less than two months after Kelley was indicted, she purchased a 2004 Cadillac Escalade from Porchay for $28,000. She says that between October 2005 and April 2006 her financial condition had improved to the point that she could afford an SUV of that sort.

Kelley has entered a plea of guilty to participating in a conspiracy with intent to distribute more than five kilograms of cocaine hydrochloride. He has admitted that he made numerous trips to Texas to bring cocaine for distribution in Little Rock. Kelley reported no income to the taxing authorities but was found in possession of hundreds of thousands of dollars in cash, as well as weapons and other evidence of drug trafficking. Porchay, who lived with Kelley, reported to the taxing authorities that she earned approximately $13,300 per year as a "document examiner" for the State of Arkansas, yet she owned assets far beyond what a person could acquire with such a small income. Those assets included a new home, a 2000 Honda Accord, a Suzuki motorcycle, a 2001 Monte Carlo, and the Cadillac Escalade. The Government had probable cause to believe that Jackie Porchay knew that these assets were acquired with the proceeds of unlawful activity.[1] Hence, the

---

[1] These facts were contained in the affidavit of Special Agent James P. Woodie filed in response to motions to suppress by Porchay and Kelley. *See* Attachment 2 to Document #90 and Attachment 2 to Document #117. After two hearings, the Court found that the Government had

Government had probable cause to believe that the $30,000 paid by Harold Kelley and Jackie Porchay to Yolanda Summons represented the proceeds of unlawful activity and that the 2004 Cadillac Escalade was purchased with proceeds of illegal activity. Summons has not disputed that fact; it appears that she tacitly concedes that the Government had probable cause to believe that the $30,000 in cash and the 2004 Cadillac Escalade represented the proceeds of unlawful activity.

The only argument, then, that Summons makes is that the Government had no evidence that she knew that the cash and the Escalade represented the proceeds of some form of unlawful activity or that the transactions were designed in whole or in part to conceal or disguise the source or ownership of the proceeds.

The transaction in which Summons sold the Denali to Porchay has all the earmarks of a transaction designed for concealment. The buyer paid $30,000 in cash, not by check, money order, draft, wire transfer, or any other means by which the proceeds could be traced. The seller did not deliver title but, instead, kept title in her name – as a person who wanted to conceal the true ownership would do. According to Summons's verified amended motion, she entered into this arrangement to build back her credit history because she had filed bankruptcy "several years earlier."[2] That explanation frankly does not make sense. Summons had just obtained financing in the amount of $29,757 for the purchase of the Denali, according to her statement, so apparently the

---

probable cause to believe that evidence of drug trafficking and money laundering could be found at Porchay's residence. *See* Documents #150 and #283.

[2] According to the Government, Summons filed her bankruptcy petition in 2002 and the bankruptcy was terminated in January 2003.

bankruptcy did not prevent her from obtaining that loan.[3]  Moreover, if Summons had taken the $30,000 that she received in cash from Jackie Porchay and Harold Kelley and used it to satisfy the debt, the satisfaction of that debt would still have been reported on her credit history, and she could have delivered title to Porchay.  Instead, she either requested or acquiesced in an arrangement whereby it was represented that she owned a vehicle that, according to her, actually was owned by Jackie Porchay; and she accepted payment of $30,000 in cash from Porchay and Harold Kelley, who happened to be a drug trafficker.  When all of this evidence is put together it comes to this: Summons's sister, Jackie Porchay, had no visible means of income by which she could earn more than $13,300 per year; Porchay's boyfriend had no visible means of income at all; yet Porchay and her boyfriend had $30,000 in cash to pay for a GMC Yukon Denali while also paying for a Cadillac Escalade; and the two sisters agreed to structure the sale of the Denali so that the source of the payment could not be traced and the true owner would be concealed.

Then, in April 2006, a little more than a month after Kelley was indicted, Porchay sold Summons the 2004 Cadillac Escalade.  As noted above, the Government had reason to believe that the Escalade was purchased with proceeds from Kelley's drug trafficking.  Unlike the transaction with the Denali only a few months earlier, this one was well documented – the sisters wrote a bill of sale and transferred title, Summons obtained financing and satisfied Porchay's debt on the SUV, and Summons registered the SUV in her name.  Thus, the transaction by which a drug trafficker and his girlfriend acquired an expensive SUV, apparently with proceeds of drug trafficking, was undocumented – it was a cash transaction with no bill of sale and no transfer of title; while the

---

[3] The Government says that Summons did not disclose the bankruptcy to the lender, but the Court assumes that the lender ran a credit check which disclosed the earlier bankruptcy.

transaction in which the drug trafficker and his girlfriend, after he was indicted, disposed of another expensive SUV was well documented. Summons, the sister of the drug trafficker's girlfriend, was the seller in the undocumented transaction in which an expensive SUV became available to the drug trafficker and the buyer in the documented transaction in which an expensive SUV previously available to the drug trafficker was, after his indictment, ostensibly placed beyond forfeiture to the Government.

On this evidence, it was reasonable for the Government to believe that Summons was participating in a money laundering scheme, even if she denied it, and even if her sister and her sister's boyfriend denied it.

While the evidence against Summons is not as strong as the evidence against Porchay, Summons has not shown that the position of the United States was vexatious, frivolous, or in bad faith. It may be that the Government's evidence would fall short of proving beyond a reasonable doubt that Summons was guilty; it may even be that if the case were tried the evidence would be insufficient to survive a motion for acquittal; but the test is not whether the Government could prove its case. *Isaiah*, 434 F.3d at 519; *Knott*, 256 F.3d at 29; *Gilbert*, 198 F.3d at 1302. The test is whether the prosecution was vexatious, unreasonable, or in bad faith. On that issue, Summons has the burden of proof, and she has not met that burden.

Summons also recites hearsay from an unnamed source regarding conversations that purportedly took place between representatives of the Government and Porchay, Kelley, or a lawyer or lawyers representing one or both of them. She says that these conversations included exculpatory information that was not provided to her in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). This Court's pretrial order requires the Government to disclose *Brady* information in time for

effective use at trial. *See* Document #205. If exculpatory information was known to the Government but not disclosed before the indictment was dismissed, that would not show a *Brady* violation because the trial never occurred, nor would it show bad faith. As will be explained, the Government attorney was unable to prepare for trial, so it is not surprising that she had not provided *Brady* material before dismissing the indictment.

On May 10, 2007, the Government moved for a continuance of the May 21 trial date because the Assistant United States Attorney responsible for this case had been ill and, as mentioned above, had been unable to prepare for trial. Summons objected to the continuance because she was scheduled for deployment to Iraq in July and both she and her unit needed to know her status. Between May 21 and July, the Court calendar had only one week available in which to try the case. However, Porchay's lawyer stated that he was scheduled for trial in another case that week. Thus, the alternatives were to deny the motion for a continuance even though the Assistant United States Attorney had been ill or to continue the case until sometime after Summons was scheduled to be deployed to Iraq. Assuming that Summons was innocent because she had not been proven guilty, the Court decided that the unfairness to her of granting the continuance was greater than the unfairness to the Government in denying the continuance. If the Assistant United States Attorney had not been ill, this case would have been tried as scheduled; if Summons had not been a military officer scheduled for deployment in Iraq, the case would have been continued and tried later; or if Porchay's lawyer had not had a conflict with the only date available on the Court's calendar, the case would have been continued but still tried before Summons's deployment. The confluence of unfortunate circumstances prevented trial. On these facts, it would be unjust to award attorney's fees. *Walker*, 380 F.3d at 391.

## CONCLUSION

Summons has not met her burden of proving that the Government's position was vexatious, frivolous, or in bad faith. It would be unjust to award fees in this case. The motion for attorney's fees and amended motion for attorney's fees are DENIED. Documents #292 and #301.

IT IS SO ORDERED this 30th day of August, 2007.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE